IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20822
_____

RON SCOTT SHAMBURGER,

Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:00-CV-1868
_____

March 25, 2002

Before JOLLY, SMITH, and STEWART, Circuit Judges.

PER CURIAM:[*]

Ron Scott Shamburger was convicted and sentenced to death in

Texas state court for the murder of Lori Baker during the course of

a burglary of her residence. The Texas Court of Criminal Appeals

affirmed his sentence. After the state courts denied his request

for post-conviction relief, Shamburger filed a habeas petition in

federal district court. The district court also denied relief.

Shamburger now seeks a certificate of appealability ("COA") from

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

this Court on two issues related to the imposition of the death penalty in his case. Because we find that Shamburger has not made a substantial showing of the denial of a constitutional right with respect to either issue, we deny his application for a COA.

I

In 1994, Shamburger became obsessed with the victim, Lori Baker, while they were both students at Texas A & M University. On two separate occasions in August and September of 1994, Shamburger unsuccessfully attempted to burglarize Baker's home. In late September 1994, Shamburger succeeded in breaking into Baker's house. Several days later, Shamburger returned to Baker's house with a can of gasoline, a 9mm semi-automatic pistol, and duct tape. He entered the house through a window and broke into Baker's locked bedroom where she was sleeping. As Shamburger was binding Baker's hands together with the duct tape, he heard Baker's roommate return home. Shamburger immediately shot Baker in the head and killed her. Shamburger then located Baker's roommate, held her at gunpoint, and locked her in the trunk of her car. After Shamburger released the roommate some distance away, he returned to Baker's house and used the gasoline to light the house on fire in an attempt to conceal the murder. Later that night, after consulting with his minister, Shamburger turned himself in to the police and confessed to Baker's murder.

At his October 1995 capital murder trial, Shamburger did not contest his guilt. During the sentencing phase of the trial,

Shamburger presented a number of witnesses who attested to his good character. The state countered by emphasizing the nature of the murder and by presenting evidence of related burglaries and other misconduct. After hearing this evidence, the jury found that "there is a probability that the defendant . . . would commit criminal acts of violence that would constitute a continuing threat to society." The jury also found that, "taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant," the mitigating circumstances were not sufficient to warrant a sentence of life imprisonment rather than a death sentence. As required by statute, the trial court sentenced Shamburger to death. He appealed his sentence.

In an unpublished opinion, the Texas Court of Criminal Appeals affirmed Shamburger's death sentence based on its determination that the jury heard sufficient evidence to support its finding on future dangerousness. The United States Supreme Court denied certiorari. In 2000, Shamburger filed a petition for post-conviction relief in state court raising eight claims of error. The state habeas court recommended that relief be denied, and the Texas Court of Criminal Appeals adopted that recommendation in July 2000 without a written opinion. After retaining new counsel, Shamburger filed a federal habeas petition in the Southern District of Texas. In his petition, Shamburger attacked only his sentence and raised claims concerning juror bias, improper jury

3

instructions, improper remarks by the prosecutor, the introduction of testimony by the victim's parents, and the constitutionality of the Texas death penalty scheme. The district court granted summary judgment in favor of the government and dismissed Shamburger's petition. The court also denied Shamburger's request for a COA. Shamburger has now requested a COA from this Court on two issues.

II

Because Shamburger filed his federal habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs his case. Under the AEDPA, we may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this requirement, Shamburger must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 482 (2000) (citations and internal quotation marks omitted). In conducting this inquiry, we must determine whether reasonable jurists would find debatable the district court's conclusion that the state habeas court did not unreasonably apply clearly established federal law. See Beazley v. Johnson, 242 F.3d 248, 263 (5th Cir.), cert. denied, 122 S.Ct. 329 (2001); see also 28 U.S.C. § 2254(d) (establishing the standard for federal habeas review of state court determinations).

Shamburger requests a COA with respect to two issues. First,

he argues that the Texas Court of Criminal Appeals unreasonably applied federal law by declining to review the jury's findings on mitigating circumstances. Second, Shamburger argues that the district court erred in holding that his claim of juror misconduct was procedurally barred. We now turn to address whether Shamburger is entitled to a COA on either of these claims.

A

During the sentencing phase of his trial, Shamburger presented the testimony of various teachers, ministers, and other community leaders as evidence of his good character and his service to the community. The jury nevertheless found that Shamburger's character and background were not mitigating circumstances sufficient to warrant a sentence of life imprisonment instead of a death sentence. The Court of Criminal Appeals did not specifically review this finding to determine whether it was consistent with the evidence presented at trial and, instead, confined its review to the sufficiency of the evidence supporting the jury's future dangerousness finding. This review was consistent with the court's position that it is impossible to review the sufficiency of the evidence concerning mitigation because "the weighing of 'mitigating evidence' is a subjective determination undertaken by each individual juror." Colella v. Texas, 915 S.W.2d 834, 845 (Tex.Crim.App. 1995) (en banc); McFarland v. Texas, 928 S.W.2d 482, 498 (Tex.Crim.App. 1996) (en banc), cert. denied, 519 U.S. 1119 (1997). Because the Texas death penalty statute authorizes a

5

death sentence only where the jury finds insufficient mitigating circumstances, however, Shamburger argues that the Court of Criminal Appeals is obligated to review the mitigation evidence presented at trial to ensure that the jury's finding was not arbitrary. Shamburger argues that the appellate court's refusal to conduct a separate review of the jury's mitigation finding deprived him of his right to "meaningful appellate review" of the jury's sentencing decision.[1] The state responds that Shamburger does not have a constitutional right to appellate review of mitigation evidence.[2]

We have already decided this issue. Although a defendant in a capital case is entitled to "meaningful appellate review" of a death sentence under the Eighth and Fourteenth Amendments,[3] appellate courts are not required to conduct an independent review of the jury's mitigation finding. Specifically, we have held that

---

[1] The Texas death penalty statute does not require the jury or the appellate court to "weigh" the aggravating factors against the mitigating factors before imposing a death sentence. See Hughes v. Johnson, 191 F.3d 607, 623 (5th Cir. 1999).

[2] The state also argues that (1) this argument is procedurally barred because Shamburger did not present it "in its present form" to the state court and (2) Shamburger's argument is based on a proposed constitutional rule that was not in effect at the time of his conviction as required by Teague v. Lane, 489 U.S. 288, 301 (1989). Because we find that Shamburger's argument is foreclosed by our precedent, we do not address these arguments.

[3] Parker v. Dugger, 498 U.S. 308, 321 (1991) ("We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally."); Clemons v. Mississippi, 494 U.S. 738, 748-50 (1990) (same).

a state appellate court satisfies the requirements under the federal constitution if it provides a meaningful review of the evidence of future dangerousness.  See Beazley v. Johnson, 242 F.3d 248, 261 (5th Cir.), cert. denied, 122 S.Ct. 329 (2001).[4]

In the present case, the Texas Court of Criminal Appeals reviewed the sufficiency of the evidence supporting the jury's finding on future dangerousness, which included consideration of the mitigation evidence presented at trial.[5]  This review of the trial record provided an "'individualized determination on the basis of the character of the individual and the circumstances of the crime'" and therefore satisfied the requirements of the Eighth and Fourteenth Amendments.  Parker, 498 U.S. at 321 (citations omitted).  Accordingly, we agree with the district court that Shamburger has not made a substantial showing of the denial of his constitutional rights and is not entitled to a COA on this issue.

B

---

[4] See also Hughes v. Johnson, 191 F.3d 607, 621–23 (5th Cir. 1999) (rejecting the argument that "the Court of Criminal Appeals's refusal to review the mitigating factors independently violated his right to 'meaningful appellate review of his death sentence' under the Constitution"), cert. denied, 528 U.S. 1145 (2000); Martinez v. Johnson, 255 F.3d 229, 241 n.17 (5th Cir. 2001) ("[T]he Eighth and Fourteenth Amendments impose a constitutional floor on the sufficiency of evidence required to sustain the jury's verdict *on the special issue of future dangerousness*." (emphasis added)).

[5] The court considered Shamburger's mitigation evidence in the course of comparing the circumstances of this case to cases in which the state presented insufficient evidence of future dangerousness.  The court's analysis makes it clear that Shamburger's sentence was not arbitrarily imposed or disproportionately severe compared with those cases.

Shamburger also argues that one of the jurors who participated in the sentencing phase of his trial engaged in serious misconduct and refused to consider the mitigation evidence presented at trial.[6] Shamburger concedes that he has not exhausted state remedies on this claim because he did not raise it in his direct appeal or in his state habeas petition. As a result, we may consider the claim only if Shamburger can show cause for his procedural default -- that is, he must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

Reduced to its essence, Shamburger's argument is that his habeas counsel was ineffective because he failed to conduct an investigation that would have revealed the alleged juror misconduct. Although an attorney's error may constitute cause for a procedural default if the error is serious enough to constitute a violation of the defendant's Sixth Amendment right to effective assistance of counsel, see Coleman v. Thompson, 501 U.S. 722, 753-54 (1991), the Sixth Amendment does not apply in habeas proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555-56

---

[6] Shamburger asserts that, shortly before trial, a religious advisor instructed one of the jurors to sentence Shamburger to death if the juror concluded that he was guilty of murder. Following this advice, the juror allegedly refused to consider any mitigating evidence and believed that he was bound to vote for the death penalty "based on scripture" once Shamburger conceded guilt.

8

(1987).[7]  It follows that the ineffectiveness of state habeas counsel cannot excuse a petitioner's failure to exhaust state remedies before raising a claim in a federal habeas petition.  See Beazley v. Johnson, 242 F.3d 248, 271 (5th Cir. 2001) ("[W]e easily conclude that the district court properly dismissed, as without merit, any claim of ineffective assistance of habeas counsel as 'cause' for procedural default.").[8]

Shamburger nevertheless argues that his procedural default should be excused because the ineffectiveness of his state habeas counsel was attributable to an external impediment:  the state's "arbitrary" limitation on the funds available to compensate counsel in state court post-conviction proceedings.[9]  Because this

---

[7]  See also Coleman, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings. . . .  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." (citations omitted)).

[8]  See also Coleman, 501 U.S. at 753-54 ("In the absence of a constitutional violation [of the Sixth Amendment right to effective assistance of counsel], the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.").  Shamburger also argues that this case presents a question not decided by Coleman: Do petitioners have a right to effective assistance of counsel in the first forum in which a federal claim can be raised?  As Shamburger concedes, however, this argument is foreclosed by our precedent.  See Martinez v. Johnson, 255 F.3d 229, 240-41 (5th Cir. 2001) (rejecting petitioner's claim that he had a "constitutional right to effective assistance of counsel in his first state habeas corpus proceeding so that he could raise his claims of ineffective assistance of trial counsel").

[9]  At the time of Shamburger's petition, the applicable Texas statute provided up to $15,000 to compensate state habeas counsel. Texas now provides up to $25,000 for this purpose.  See Tex. Code

9

limitation nullified his state law right to competent counsel, see Tex. Code Crim. Proc. art. 11.071 § 2(a), Shamburger also contends that he was deprived of meaningful access to the courts and due process of law.

These arguments, too, are foreclosed by precedent. As noted above, petitioners do not have a federal constitutional right to effective habeas counsel -- even where they have a state law right to counsel in post-conviction proceedings. See Finley, 481 U.S. at 555-56. Stated differently, Shamburger had no federal right to funding (adequate or otherwise) for his state habeas petition. The alleged inadequacies of the Texas compensation scheme for habeas counsel therefore do not violate any federal constitutional right and cannot constitute cause for Shamburger's failure to raise his juror misconduct claim in his state habeas petition. See Beazley v. Johnson, 242 F.3d 248, 271 (5th Cir. 2001) ("'[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court.'" (citation omitted)). Because Shamburger shows no deprivation of a federal constitutional right to effective assistance of counsel, we agree with the district court that his juror misconduct claim is procedurally barred in these proceedings.

IV

For the reasons set out above, we conclude that Shamburger has not made a substantial showing of the denial of a constitutional

Crim. Proc. art. 11.071 § 2A(a).

10

right, as required by 28 U.S.C. § 2253(c)(2).  Accordingly, Shamburger's request for a COA on each of his two claims is

DENIED.